UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **Steve Livneh**, a Canadian resident and citizen **Henvil Corporation, Ltd.** a Canadian corporation, and **Lican Developments, Ltd.**, a Canadian corporation, Plaintiffs, vs. **Bovie Medical Corporation**, a Delaware corporation, **Andrew Makrides**, an individual domiciled in New York, and **Moshe Citronowitz**, an individual domiciled in Florida. | Case No.: |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Steve Livneh ("Livneh"), Henvil Corporation, Ltd. ("Henvil"), and Lican Developments, Ltd. ("Lican"), through their counsel the Wisley Law Firm, PLLC, allege the following for their Complaint against Defendants Bovie Medical Corporation ("BVX"), Andrew Makrides ("Makrides") and Moshe Citronowitz ("Citronowitz"):

### PARTIES, JURISDICTION AND VENUE

1. Livneh is a resident and citizen of Canada.

2. Henvil is a Canadian corporation with its principal place of business located in Ontario, Canada.

3. Lican is a Canadian corporation with its principal place of business located in Ontario, Canada.

4. BVX is a publicly traded Delaware corporation that sells medical devices in all fifty states and around the world.

5. On information and belief, Makrides is domiciled in the State of New York.

6. On information and belief, Citronowitz is domiciled in the State of Florida.

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity between the Plaintiffs and Defendants, and the amount in controversy exceeds the sum or value of $ 75,000.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (i) a substantial part of the events or omissions giving rise to the claim occurred in this District; (ii) Defendants were subject to personal jurisdiction in this District at the time this action was commenced; and (iii) Plaintiffs are aliens.

## GENERAL ALLEGATIONS

9. Livneh, Lican and Henvil incorporate their prior allegations in 1- 8 herein.

10. On February 22, 2012, Plaintiffs and Defendants entered into a Confidential Settlement Agreement And Mutual General Release ("Settlement Agreement") that was intended to resolve two litigations — *Bovie Medical Corporation v. Steve Livneh, Henvil Corporation, Ltd. and Lican Developments, Ltd.*, United States District Court for the Middle District of Florida, Tampa Division, Case No. 08:10-cv-01527-SCV-EAJ and *Bovie Medical Corporation v. Steve Livneh and Henvil Corporation, Ltd.*, United States District Court for the Southern District of New York Case No. 10-9529 (CM)(GWG) ("Underlying Litigations").

11. BVX published all of the terms of the Settlement Agreement in its SEC filings.

12. In BVX's Form 10-Q for the quarterly period ending March 31, 2012, BVX reported that:

> In December 2011, a settlement related to the above Livneh litigation was structured and subsequently entered into on February 22, 2012. Under the terms of the Settlement Agreement (the "Settlement Agreement"), the Company will, among other things, perform the following: (i) make a $250,000 lump sum payment to Livneh ($50,000 of which was previously recorded and expensed), (ii) make 18 installment payments to Livneh in the amount of $23,222.22 per month, (iii) reimburse Livneh for all unpaid expenses that Livneh incurred on behalf of the Company during the period of his employment and/or consultancy (from October 1, 2006 through August 11, 2010), (iv) pay Livneh $14,700, which represents the balance of the amounts due to Henvil Corp. Ltd. under a certain bill of sale, dated April 12, 2010, (v) transfer to Livneh the title of a certain automobile, (vi) transfer to Livneh all of the Company's right and interest in certain Intellectual Property (as defined in the Settlement Agreement) pertaining to the Modular Ergonomic Grip ("MEG"), Modullion, RF Skin Resurfacing, Scannula, Double Jaw Forceps and Tip-On-Tube designs and trade name (collectively, the "Assigned Patents"), (vi) transfer to Livneh certain parts for the MEG device, (vii) **grant Livneh an exclusive license to produce, market and sell the Seal-N-Cut device in the People's Republic of China**, (viii) pay to Livneh royalty payments of 3% on the Company's Net Sales (as defined in the Settlement Agreement) of the Seal-N-Cut device outside the People's Republic of China, and (ix) pay to Livneh a one-time royalty payment of 5% upon the closing of any sale by the Company of its right or interest in any Intellectual Property pertaining to the Seal-N-Cut device. To secure the Company's obligations, the Company granted Livneh a security interest in all of its rights and interest of the Company in the Seal-N-Cut device, including all Intellectual Property pertaining thereto. Since the loss was quantifiable and known in December 2011, we recognized this settlement loss in 2011 and all payments hereunder were accrued during the fourth quarter. [Emphasis added.]

13. One of the primary considerations in reaching the Settlement Agreement was BVX granting "Livneh an exclusive license to produce, market and sell the Seal-N-Cut device in the People's Republic of China."

14. The parties to the Settlement Agreement understood at the time it was signed that Plaintiffs intended to market and sell the Seal-N-Cut device in China.

15. The parties to the Settlement Agreement also understood at the time it was signed that the ICON-VS Generator was necessary to market and sell the Seal-N-Cut device because the

3

ICON-VS Generator is a specialized power source for the Seal-N-Cut device that, *inter alia*, controls the cutting and sealing of human tissue during medical procedures.

16. As a result, the Section 4d of the Settlement Agreement provided that BVX would sell an ICON VS Generator to Livneh within 10 days of the dismissal of the Underlying Litigations:

> **Sale of ICON VS Generator.** Within ten (10) days after the filing of the Stipulations of Dismissal with Prejudice as set forth in Sections 8 and 9, below, Bovie shall provide to Livneh one (1) ICON VS generator, complete with footswitches, at the price of Five Thousand Five Hundred and No/100ths U.S. Dollars ($5,500.00). The cost of the generator shall be in the form of (1) a credit in Bovie's favor towards the amount of any royalties due to Livneh pursuant to Section 4(b)(i), above, or (2) the first $5,500.00 of Livneh's Net Sales of the Seal-N-Cut in the People's Republic of China, whichever comes first. Bovie shall issue a purchase order to Livneh for this generator. The generator sold by Bovie pursuant to this Section shall be programmed with the current end parameters, and Bovie shall provide a list of these parameters to Livneh. The Parties acknowledge that Bovie has not obtained approval to sell or market the ICON VS generator from the People's Republic of China, and, as a result, the Parties agree that the generator transferred to Livneh pursuant to this Agreement shall be for demonstration or laboratory use only, and shall not under any circumstances be for use on humans. Bovie will make additional ICON VS generators available for sale to Livneh at the price of Seven Thousand Five Hundred and No/100ths U.S. Dollars ($7,500.00) for the first two years after the Parties' execution of this Agreement, after which time Bovie shall be entitled to increase the price of ICON VS generators sold to Livneh for demonstration or laboratory use by no more than Five Percent (5%) per year.

17. The Section 4d of Settlement Agreement further provided that BVX would sell to Livneh additional ICON-VS Generators.

18. A March 1, 2012 Stipulation of Dismissal With Prejudice was filed with the Middle District of Florida (Dkt# 115) in the Florida portion of the Underlying Litigations.

19. A March 5, 2012 Stipulation of Dismissal With Prejudice (Dkt# 12) was filed in the Southern District of New York.

20. Thus, BVX was obligated to provide Livneh the first ICON-VS Generator on or before March 15, 2012.

21. Note 10 to BVX's 10-Q for the quarterly period ending March 31, 2012 states that BVX complied with the Settlement Agreement terms:

> As of March 31, 2012 we have complied with the agreement and have paid the initial $250,000 lump sum and the $14,700 due to Henvil, we transferred the related inventory, and we have initiated the transfer of other assets and patents as outlined in the Settlement Agreement. Monthly installment payments will begin on May 1, 2012.

22. However, BVX to date has refused to provide Livneh with any ICON-VS Generators.

23. Thus, as of March 15, 2012, BVX was in breach of the Settlement Agreement and remains so today.

24. BVX's Form 10-Q for the quarterly period ending March 31, 2012 identifies the ICON VS Generator as one of the products that it developed in house and is continuing to invest in expanding:

> Product Development. We have developed most of our products and product improvements internally. Funds for this development have come primarily from our internal cash flow and equity issuances. We maintain close working relationships with physicians and medical personnel in hospitals and universities who assist in product research and development. New and improved products play a critical role in our sales growth. We continue to emphasize the development of proprietary products and product improvements to complement and expand our existing product lines. We have a centralized research and development focus in Florida for new product development and product improvements. Our research, development and engineering units at the manufacturing locations maintain relationships with distribution locations and customers to provide an understanding of changes in the market and product needs. During 2012, we continued to invest in expanding our plasma product line and technology, ***ICON VS*™ *and the accompanying vessel sealing technology***, and Aaron™ 1450. We intend to pay the ongoing costs for this development from operating cash flows.

25. BVX's Form 10-K for the fiscal year ending December 31, 2011 states that BVX obtained 501k approval for the ICON-VS Generator:

> ICON™ VS

5

This generator expands further on our ICON™ platform which incorporates a flexible and simple user interface and allows for customization of the output modes for a variety of electrosurgical applications. This product, like the ICON™ GI and GP, its predecessor generators, is designed and being developed to add safety features and improve convenience in performing general purpose procedures and includes a vessel sealing component. This generator will also be used with our Seal-N-Cut handle and accessories. We have received 510K FDA clearance to market the ICON™ VS.

26. The ICON VS Generators are essential to market and operate the Seal-N-Cut vessel sealing technology in the People's Republic of China (or anywhere else for that matter) because without them, the Seal-N-Cut devices are inoperable.

27. Thus, the ICON VS Generators are a material part of the consideration for the Settlement Agreement and are expressly part of the Settlement Agreement.

28. On June 4, 2012, Plaintiffs provided Defendants notice of breach of the Settlement Agreement, which identified BVX's failure to provide Livneh the ICON VS Generators as well as to assign certain patents, among other things, as breaches of the Settlement Agreement. (Attached hereto as Exhibit A.)

29. Meanwhile, Lican and a consortium of Chinese entities ("Ma") have been working since late 2010 to form a joint venture medical device company ("JVC"), operating in China and North America with the purpose of marketing and selling the Seal-N-Cut product in the People's Republic of China.

30. Defendants knew about the JVC at the time Defendants signed the Settlement Agreement because Livneh told them about it.

31. On May 25, 2012, Lican entered into a contract with the Administrative Committee of Jiangsu Wujin ("WEZ"), an agency of the People's Republic of China ("WEZ Contract"), which granted Lican prime industrial park land parcel of 20 Chinese acres to have the

new JVC company with the Ma group build their Chinese operations in the People's Republic of China.

32. The WEZ Contract required Lican or its financiers to provide U.S.$10,000,000 in capital for the project.

33. In exchange the WEZ authorized Lican to purchase land at a favorable rate, favorable tax rebates (50%), equipment investment subsidies and other subsidies and favorable terms that will be lost if Lican does not timely begin the project.

34. Lican and Ma reached an agreement in which Ma would invest US$ 4,000,000 for 40% of the issued shares of the JVC and to provide the US$10,000,000 as required by the WEZ Contract.

35. Ma's primary interest in the project was the Seal-N-Cut instruments and the specialized generator, the ICON VS Generator.

36. Based upon the obligations set forth in the Settlement Agreement, Lican promised Ma that Lican would demonstrate a working ICON VS Generator as well as sample Seal-N-Cut instruments and drawings.

37. Ma expected to see the working generator during Lican's April 2012 visit.

38. Even though that did not happen (because of BVX's breach of Settlement Agreement obligations to provide Livneh an ICON VS Generator), Ma appeared in front of the WEZ and testified that MA committed support and backing for US$10,000,000.

39. MA again expected to see the ICON VS Generator during a May 24-25, 2012 meeting with Lican and the WEZ in Chicago.

40. Ma flew to Chicago to attend the signing of Lican's agreement with WEZ representatives but Lican was again unable to demonstrate the ICON VS Generator.

41. Lican promised Ma that Lican would keep pressing BVX to get the ICON VS Generator and Ma agreed to proceed in the necessary steps to form and build the JVC.

42. During Lican's June 2012 visit to China, Lican admitted to not receiving the ICON-VS Generator, but assured Ma that Lican had written a letter to BVX demanding that it provide Lican the ICON VS Generator.

43. Ma gathered for a summary meeting to review the situation, following which Ma concluded:

   a. The ICON VS Generator is a must for Ma to proceed with the project as without it Ma cannot register the JVC and apply for Chinese license to sell.

   b. Ma did not believe in BVX honesty or intention to provide the ICON VS Generator.

   c. It will take about 18-24 months to design and certify a new generator which will delay the certification of the Seal-N-Cut instruments.

44. Therefore, Ma reached a final decision to withdraw from the project because BVX did not provide the ICON VS Generator, as promised.

45. Furthermore, Ma indicated that it did not believe that BVX is actually working on the Seal-N-Cut project and we have grave doubt whether they will ever provide a working ICON-VS Generator to support the Seal-N-Cut instruments.

46. Thus, Defendants breaches have prevented Plaintiffs from marketing and selling the Seal-N-Cut products in the People's Republic of China, which was a primary consideration for the Settlement Agreement.

47. Following the June 4, 2012 Notice of Breach, BVX's Chief Executive Officer Makrides called Livneh to discuss the Notice of Breach. During that phone call, Makrides claimed that "We cannot make it work" and that "We actually have no plans to make and market the Icon VS". In response to Livneh's protests, Makrides stated that "We hope we can make it work by July."

48. Moreover, BVX has not assigned certain patents to Plaintiffs, which Defendants are obligated to do pursuant Section 3 of the Settlement Agreement. In particular, ¶ 3 provides that BVX shall immediately upon signing the Settlement Agreement assign certain Intellectual Property to Livneh.

49. Moreover, Settlement Agreement ¶ 15 provides that:

15. **Further Assurances.** The Parties agree to (a) furnish upon request to each other such further information; (b) execute and deliver to each other such other documents; and (c) do such other acts and things, all as the other Parties may reasonably request for the purpose of carrying out the intent of this Agreement.

50. Livneh reasonably requested that BVX provide the Assignment documents that reflect the assignment of the Intellectual Property to Livneh.

51. Inexplicably, BVX has to date refused to do so.

52. Recently, BVX intellectual property counsel, Howard & Howard, represented that it would prepare assignment documents for the following Intellectual Property:

- 068267.00021; U.S. 11/773705
- 068267.00036; U.S. 11/953709
- 068267.00046; EP 07796648.9
- 068267.00047; CN 2000780030538.5
- 068267.00049 CN 200780030759.2

53. However, the CSA obligates BVX to assign *all* of the Intellectual Property, including without limitation the following patents with reference numbers as below:

1. 068267.00002
2. 068267.00007
3. 068267.00008
4. 068267.00024
5. 068267.00025
6. 068267.00026
7. 068267.00027
8. 068267.00033
9. 068267.00034
10. 068267.00035
11. 068267.00039
12. 068267.00042
13. 068267.00055
14. 068267.00056
15. 068267.00061
16. 068267.00062
17. 068267.00063
18. 068267.00064
19. 068267.00065
20. 068267.00066
21. 068267.00068
22. 068267.00069
23. 068267.00070
24. 068267.00074
25. 068267.00075

54. Most of the missing patents relate to the MEG and Modullion technologies.

55. Further, all patent maintenance costs that were incurred prior to the assignment of said patents should be paid by BVX.

56. BVX's refusal to assign the above patents is a breach of the Settlement Agreement, which has continued since February 22, 2012.

### COUNT I - BREACH OF CONTRACT

57. Plaintiffs incorporate their prior allegations in 1-56 herein.

58. There is a binding and enforceable Settlement Agreement between Plaintiffs on the one hand, and Defendants on the other hand, that require Defendants to, *inter alia,* take certain actions that facilitate Plaintiffs' marketing and sale of the Seal-N-Cut products in the People's Republic of China.

59. Plaintiffs have satisfied their obligations to Defendants.

60. Defendants breached their obligations to Plaintiffs as described above and in the June 4, 2012 Notice of Breach Letter. (Exhibit A.)

61. Plaintiffs have been damaged by Defendants' breach in an amount in excess of $75,000.

WHEREFORE, Plaintiffs request that this Court enter a money judgment in their favor, and against Defendants, together with an award of interest, costs, attorney fees, and such other relief as the Court may find appropriate, including an order of specific performance that Defendants shall (i) immediately provide Plaintiffs with all ICON VS Generators and (ii) assign to Plaintiffs all patents identified in the Settlement Agreement.

### COUNT II - TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCIES

62. Plaintiffs incorporate their prior allegations in 1-56 herein.

63. Defendants were aware of Plaintiffs' business relationships and expectations in China pursuant to which Plaintiffs would market and sell the Seal-N-Cut device in China.

64. Notwithstanding Defendants' knowledge of Plaintiffs' Chinese business relationships and expectations relating the marketing and sale of the Seal-N-Cut device in China,

intentionally and improperly interfered with Plaintiffs' Chinese business relationships and expectations by, *inter alia,* refusing to provide Plaintiffs with an ICON VS Generator, which is necessary to market and sell the Seal-N-Cut device.

65. Defendants' wrongful, intentional and willful actions caused or induced the breach, termination or disruption of Plaintiffs' business relationships and expectations.

66. Defendants, wrongful, intentional and willful interference with Plaintiffs' business relationships and expectations directly and proximately caused Plaintiffs damages, including but not limited to:

    a. Loss of contracts or business relationships with the Ma Group and other Chinese interests, including in particular $4,000,000 in financing the marketing and sale of ;

    b. Loss of goodwill;

    c. Loss of business reputation;

    d. Loss of esteem and standing in the community;

    e. Loss of business opportunities.

WHEREFORE, Plaintiffs request that this Court enter a money judgment in their favor, and against Defendants, together with an award of interest, costs, attorney fees, and such other relief as the Court may find appropriate, including an order of specific performance that Defendants shall immediately (i) provide Plaintiffs with all ICON VS Generators and (ii) assign to Plaintiffs all patents identified in the Settlement Agreement.

## COUNT III – FRAUD IN THE INDUCEMENT

67. Plaintiffs' incorporate by reference their prior allegations in 1-56 herein.

68. Makrides and Citronowitz each deliberately and intentionally misrepresented to Livneh that the ICON-VS Generator worked at the time that Plaintiffs signed the Settlement Agreement.

69. Furthermore, BVX misrepresented in its SEC filings that the ICON VS Generator worked.

70. Makrides and Citronowitz each deliberately, knowingly and intentionally made the misrepresentations with the specific intention that Plaintiffs would detrimentally rely on the misrepresentations.

71. The misrepresentations related to material facts and concerned past or existing fact (i.e., that ICON VS Generators worked at the time that the Settlement Agreement was signed).

72. Plaintiffs reasonably relied upon the misrepresentations by entering into the Settlement Agreement.

73. Plaintiffs suffered damages as a direct and proximate result of Defendants' misrepresentations, which include but are not limited to:

   a. Loss of stock;

   b. Loss of royalties;

   c. Loss of economic advantages;

   d. Loss of profits;

   e. Loss of reasonable business expectations;

    f.    Entering into a Settlement Agreement that provided for far less consideration than it would have in light of the fact that Plaintiffs would not be able to market or sell the Seal-N-Cut product in China;

    g.    Dismissing two litigations under false pretenses;

    h.    Other damages that will be determined through discovery and expert witness testimony; and

    i.    Attorneys' fees and costs.

WHEREFORE, Plaintiffs request that this Court enter a money judgment in their favor, and against Defendants, together with an award of interest, costs, attorney fees, and such other relief as the Court may find appropriate, including rescission of the Settlement Agreement.

### JURY DEMAND

Plaintiffs demand a trial by jury in this matter.

Respectfully submitted this 5th day of July, 2012.

*/s/ Chris A. Barker*

Chris A. Barker, Esquire
Florida Bar No. 885568
BARKER, RODEMS & COOK, P.A.
501 East Kennedy Boulevard, Suite 790
Tampa, Florida 33602
813/489-1001 (Telephone)
813/489-1008 (Telecopier)
cbarker@barkerrodemsandcook.com
Attorneys and Local Counsel for Plaintiffs

AND

Christopher S. Olson (P58780)
Rachel E. Wisley (P63227)
WISLEY LAW FIRM, PLLC
321 South Williams Street
Royal Oak, Michigan 48067
(248) 543-9000
colson@wisleylawfirm.com
rwisley@wisleylawfirm.com
Lead Attorneys for Plaintiffs